# In re Petition for Change of Name of Amanda Nicole Kennedy

*Jeffrey T. Bitzer,* for petitioner.
*Gloriana Noreika,* for objector.

UHLER, *J.,* April 13, 1993—This matter is before the court on petition of Kimberly A. Patterson, mother of Amanda Nicole Kennedy, a minor born July 25, 1987, wherein "[t]he minor child and her mother wish to change the child's name from Amanda Nicole Kennedy to Amanda Nicole Kennedy-Patterson." As a result of the petition and notice of objection from Amanda's natural father, Dale F. Kennedy, a hearing was held by the court prompting the within findings.

Amanda Nicole Kennedy was born of the marriage of Dale F. Kennedy (hereinafter referred to as father) and Kimberly A. Patterson (formerly Kennedy; hereinafter referred to as mother). The parents were separated during December 1987 and a final decree in divorce and custody was granted on August 9, 1989 in the Circuit Court of Baltimore County, Md. A separation agreement was executed by the parties on February 25, 1988, wherein it was provided that the mother shall have the care and

custody of the child, with the right and privilege of father to visit at "such times as can be agreed upon between the parties." The judgment of absolute divorce awarded guardianship and custodial rights of Amanda to the mother with reasonable rights of visitation unto the father.

Testimony disclosed that father maintained visitation up through 1991 with relative consistency, the largest space of time being two months (July and August 1991) wherein visitation with Amanda was not exercised. The mother describes this two-month period as an abandonment. It was during this time frame that mother entered into a marital relationship with David Patterson (hereinafter referred to as stepfather) of York County, who has custodial responsibility for two children, namely Erin, 6, and Connor, 4. The Pattersons were married in July 1991. In the latter part of 1991 father sought a more expansive modification of the visitation rights with Amanda and a consent order modifying judgment of absolute divorce dated March 25, 1992, was entered of record in the Circuit Court of Baltimore County. We understand that father, who continues to reside in the state of Maryland, has since diligently exercised his visitation rights with Amanda and has fulfilled his support obligations. Mother considers father and daughter as having a "very good relationship" with one another and that Amanda loves her father and likes to be with him. Mother also advised that Amanda has a good relationship with her stepfather who she now calls "Dad."

As described during the testimony of mother and stepfather, the subject of Amanda's last name was initiated by Amanda at age 3 during a family dinner discussion with stepfather's children (then ages 2 and 4), wherein she expressed the wish to have the last name of Patterson. Mother indicated this impromptu request was considered by the family as a positive indicator of the bonding and

blending of the two family units. Amanda was later described by mother as evidencing substantial confusion such as asking who is her "real" father or "real dad" and the issue over her family name. Mother advised the court that she tried to explain to Amanda she is now a Kennedy and a Patterson. Amanda has been told that it really doesn't matter what her last name is because she will remain a part of the Patterson family and that her last name will not affect where she lives. Stepfather has told her that it is her right to choose her name. Amanda was registered at school as Amanda Kennedy-Patterson by her mother and stepfather.

Mother testified that out of concern that the blended Patterson family adjust well from the outset, professional counseling help was sought from Sharon Athey, Ph.D, who holds a school psychology degree. Dr. Athey became involved with both individual and family counseling with the Pattersons. Dr. Athey established for the Patterson unit a reinforcement program and a time-out program through a token system in dealing with behavioral responsibilities of the children. Mother described to Dr. Athey Amanda's confusion with the issue of who is her "real dad" and how to refer to the significant principals. It was recommended by Dr. Athey, according to mother, that Amanda refer to her father as her "biological" father and that would clear things up. Mother further advised that it was in the summer of 1992 that Amanda first suggested using the hyphenated name "Kennedy-Patterson" as her last name. Mother opined that Amanda would like to change her surname to Patterson but Amanda is concerned about her father's feelings as she is reluctant to go against him.

Stepfather confirmed that he has been involved with Amanda since 1990, and he is not attempting to alienate her from her father. It was acknowledged by stepfather

that adoption of Amanda had been discussed with mother and perhaps Dr. Athey.

Dr. Athey was called as an expert in counseling. She testified that she first saw Amanda in May 1991 and was principally involved with counseling of the Pattersons for situational adjustment of the family unit. Dr. Athey advised she learned from Amanda that the minor would like to be known as Amanda Patterson when she was with the Pattersons but would like to be known as Amanda Kennedy when she is with her father and his family. Dr. Athey asserts that Amanda desires to change her name to Kennedy-Patterson but her father doesn't want her to change her legal name. The court was further advised by Dr. Athey that "Amanda would be extremely disappointed in her father if the change is not made and that refusal to change the name might interfere with Amanda and Mr. Kennedy's relationship."

Father, on the other hand, has both formally (in the context of the within proceeding) and informally opposed an alteration of Amanda's last name. Mother proposed the alternative hyphenated variations to him—both of which were rejected by him. He described the confusion and guarded responses of his daughter and acknowledged that on at least two occasions he corrected her as to her last name. It was likewise apparent to the court as a result of the mother's and father's testimony that Amanda's paternal grandparents are an integral factor in the overall Kennedy family makeup with substantial interests in Amanda. Father described a good, close relationship with his daughter and further advised that Amanda's relationship with his new wife is good. During the pendency of the within proceeding father and Adrian (his wife) have given birth to a half-brother of Amanda.

Janet Bliss, a psychology resident holding a Master in Science for Clinical Psychology degree, and who an-

ticipates receiving her license from the State Board on April 14, 1993, testified on behalf of the father. Ms. Bliss further reported to the court that she has been permitted to offer expert testimony in more than 40 court appearances in the Court of Common Pleas of York County relative to issues of visitation, custody, dependency, and involuntary terminations. Ms. Bliss described Amanda's reaction to discussion relative to her last name during her interview as upset. Later when it was brought up again Amanda expressed that she wanted her last name to be Kennedy. The court notes that Amanda's response to Ms. Bliss was compatible with Dr. Athey's advice that Amanda indicated to her that she was a Patterson when she was with the Pattersons and a Kennedy when with the Kennedys.

Significantly it was Ms. Bliss's position that preoccupation with a surname by a child of three to five years of age is not normal. She opined that a name is or should be a fact of life "that just is," similar to a nose or any body appendage. With this foundation, Ms. Bliss concluded Amanda's preoccupation with the last name issue must have been presented to her by third persons. The resident in clinical psychology further deemed the response of the Pattersons to be not one of encouraging Amanda to retain the Kennedy name but to do otherwise. Ms. Bliss took particular objection to the suggestion and utilization of the term "biological father" as referencing Dale Kennedy by the Pattersons. Ultimately she opined that empowering a child of this age to alter her name is a mistake. "It was a mistake two years ago and should be repaired."

The court met with Amanda in chambers accompanied by counsel for the respective parties. Amanda advised the court that she wished to be known as Patterson. Amanda also appeared to understand the purpose for the

meeting and accept that it is the court's responsibility to resolve the name issue. Unquestionably Amanda is a delightful young lady who naturally was focused on the largest of the jelly beans and M&M candies. The court discerns that Amanda appears to be a happy and self-assured child who was aware of the issues presented by the proceeding.

Mother advances the initial argument that as legal custodian she has the legal right to make major decisions affecting the best interests of a minor child, including but not limited to medical, religious and educational decisions. Pa.R.C.P. 1915.1(b), 23 Pa.C.S. §5302. See also Uniform Child Custody Jurisdiction Act, 42 Pa.C.S. §5343. Citing in addition her ability to authorize life-threatening surgery, she argues that she possesses the full legal right to make major decisions affecting the best interests of the child without the need to consult with or seek the concurrence of Mr. Kennedy. This authority, she asserts, extends to her the right to convert the child's surname to a hyphenated surname.

No case authority is offered in support of mother's initial argument and we decline to adopt her position. We note the state Legislature provided that "it shall be unlawful for any person to assume a name different from the name by which such person is and has been known, unless such change in name is made pursuant to proceedings in court as provided by this chapter." See 54 Pa.C.S. §704(a). While the legislation informally allows a "person to adopt and use any name if such name is used consistently, nonfraudulently, and exclusively," 54 Pa.C.S. §704(b), it is believed that "person" in this context, absent court approval, is an adult person. Indeed this distinction becomes apparent when we address 54 Pa.C.S. §703, wherein it is provided *"whenever an order is made* under this chapter changing the surname of anyone who

is at the time thereof the parent of a minor child or adopted minor child, then under the care of such parent, the new surname of such parent shall, unless ordered by the court, thereafter be borne likewise by such minor child." (emphasis added) Subsection 703(b) establishes a procedure whereby any minor whose surname has been changed as a result of subsection (a) would be entitled to pursue a change of name. Clearly the Judicial Name Change Act contemplated that a name change of a minor necessitated court approval rather than the determination of a custodial parent.

In further support we note that the Pennsylvania Supreme Court was silent in a recent decision regarding the issue whether the custodial parent has the legal right to change the surname of a minor child wherein it adopted in a case of first impression the "best interest of the child standard" as the primary focus for the trial court in analyzing the propriety of a formal name change. *In re Change of Name of Zachary Thomas Andrew Grimes to Zachary Thomas Andrew Grimes-Palaia,* 530 Pa. 388, 609 A.2d 158 (1992).

The Pennsylvania Supreme Court in so adopting the the best interest of the child standard further held that a petitioner in such instance must bear the burden of establishing that a change would be in the best interest of said child, *Id.* at 393, 609 A.2d. at 161. It has been said that the authorization to change the name is discretionary in the court.

In light of the above-articulated standards we have reviewed the testimony offered and conclude that based upon the record before the court the petitioner has failed to sustain her burden of establishing that a name change would be in the best interest of Amanda. It is acknowledged that Amanda heretofore has been permitted some latitude in establishing her surname by the Pattersons

and Dr. Athey; however, the propriety of that empowerment and the resultant affect of the same has not been established for the benefit of the court. Dr. Athey has advised the court that to deny the name change which has been enabled by the Pattersons would result in Amanda being "extremely disappointed in her father if the change is not made" and thus "may interfere with the relationship with Mr. Kennedy." Dr. Athey further advised the court that Amanda wants her father to acknowledge the Patterson family, and it is just not fair to do otherwise. While these observations may enlighten the court as to Amanda's perceptions as interpreted by Dr. Athey, simply stated, little guidance is afforded the court as to whether the name change is in the child's best interest. A child's wish does not necessarily equate to that which is in his or her best interest.

Ms. Bliss's testimony on the other hand advised the court that on the one hand empowering a child of tender years to make such a substantive change is not appropriate. Alternatively, she suggested that in the absence of inappropriate empowerment that the child was encouraged to promote the change of name, in either or both cases she deemed the result as a mistake. Amanda should learn and be reinforced to accept reality and that is in her best interests. To paraphrase Ms. Bliss, a mistake has been made with Amanda as far back as two years ago, and it would be in her best interest to rectify this by identifying that her name is Kennedy.

As a consequence of the foregoing we are not persuaded that petitioner has met her burden but rather that an improper message would be sent to Amanda based upon this record if the court were to adopt the petitioner's request. We agree with Ms. Bliss that labeling father as "biological" father as a common usage descriptive label may be degrading. At best it presents a clinical

sanitized label of a parent which may be conducive to alienation. Both parents should reciprocally recognize and actively reinforce the obvious strong support, love, and affection offered by the two toward Amanda. Based upon this record, we do not find that hyphenation accomplishes these goals but rather may foment alienation. We trust the Pattersons will reinforce and support this court's decision regarding the denial of a formal name change for Amanda at this time. Failure to support this decision may negatively impact upon later custody proceedings relating to Amanda as constituting conduct upon the part of a parent detrimental to the child's best interest.

## ORDER

And now, April 13, 1993, upon consideration of the petition, the testimony, and the briefs submitted on behalf of the parties, it is ordered that the petition for change of name is denied.